# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REWARDIFY, INC., <br><br>                              Plaintiff, <br><br> v. <br><br> SYNVEST CANCO, INC.; RED JACKET CAPITAL, INC.; ADAM SALAHUDEEN; KEN MCCORD; and DAVE SANDERSON, <br><br>                              Defendants. | Case No.: 3:21-cv-00046-H-JLB <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** <br><br> [Doc. No. 9.] |

On January 8, 2021, Plaintiff Rewardify, Inc. filed a complaint against Defendants Synvest Canco, Inc., Red Jacket Capital, Inc., Adam Salahudeen, Ken McCord, and Dave Sanderson. (Doc. No. 1, Compl.) On August 9, 2021, Defendants Red Jacket Capital, Inc., Ken McCord, and Dave Sanderson (collectively, the "Red Jacket Defendants") filed a motion to dismiss Plaintiff's complaint for lack of personal jurisdiction. (Doc. No. 9.) On August 10, 2021, the Court took the matter under submission. (Doc. No. 10.) On September 27, 2021, Plaintiff filed its opposition. (Doc. No. 13.) On October 13, 2021, the Red Jacket Defendants filed their reply. (Doc. No. 17.) For the reasons that follow, the Court denies the Red Jacket Defendants' motion to dismiss.

## **Background**

This case involves an alleged breach of contract regarding a stock purchase agreement between Plaintiff and Defendants. (Compl.) Plaintiff is a Delaware corporation with a principal place of business in San Diego County, California. (Id. ¶ 4.) Defendant Red Jacket Capital, Inc. ("Red Jacket") is a Canadian corporation with a principal place of business in London, Ontario, Canada. (Id. ¶ 7.) Defendant Ken McCord ("McCord") is a Canadian citizen who resides in Ontario, Canada. (Id. ¶ 8.) Defendant Dave Sanderson ("Sanderson") is a Canadian citizen who resides in Ontario, Canada. (Id. ¶ 9.) McCord and Sanderson are principals of Red Jacket. (Id. ¶ 12.)

Plaintiff develops application games that consumers play on mobile phones to win cash prizes. (Id. ¶ 10.) In September 2019, Plaintiff reached out to the Red Jacket Defendants in order to raise additional capital to fund the growth of its business. (Id. ¶ 12.) Plaintiff began working on a stock purchase agreement ("SPA") with the Red Jacket Defendants and Defendant Salahudeen. (Id. ¶¶ 12–14, 16). Plaintiff alleges that the Red Jacket Defendants led Plaintiff to believe that Defendant Salahudeen was an employee or an agent of Red Jacket. (Id. ¶ 15.) Under the terms of the SPA, Red Jacket Ventures IV Co., a subsidiary of Red Jacket, would pay approximately $2,000,000 for 10% of Plaintiff's stock. (Id. ¶¶ 14, 17.) Plaintiff alleges that just before the SPA's closing date on February 5, 2020, Defendants asked that Defendant Synvest be substituted as the purchaser in the SPA in place of Red Jacket Venture IV Co. (Id. ¶18.) Plaintiff alleges that the Red Jacket Defendants led Plaintiff to believe that Defendant Synvest was another subsidiary of Red Jacket and that Defendant Salahudeen would be signing the SPA as Defendant Synvest's President. (Id. ¶¶ 15, 21; Smith Decl. ¶ 12.) On February 5, 2020, Defendant Salahudeen executed the SPA on behalf of Defendant Synvest. (Compl. ¶ 21.) Plaintiff alleges that at Defendant Salahudeen's direction, Plaintiff converted several of its convertible promissory notes and filed an amended and restated certificate of incorporation with the Delaware Secretary of State to reflect the SPA terms. (Id. ¶ 21, 23.)

After Defendant Salahudeen executed the SPA, Plaintiff allegedly never received

the purchase price from any of the Defendants. (Id. ¶¶ 23–24.) Plaintiff alleges the Red Jacket Defendants then disclosed to Plaintiff for the first time that Defendant Salahudeen was not an employee of Red Jacket, Defendant Synvest was not a subsidiary of Red Jacket, and Defendant Salahudeen had failed to fund commitments made in a different deal negotiated by the Red Jacket Defendants in 2019. (Id. ¶ 26.) Plaintiff alleges it incurred substantial damages as a result of Defendants' conduct, and Plaintiff's ability to scale its business was severely hampered. (Id. ¶¶ 29–33.)

On January 8, 2021, Plaintiff filed a complaint for: (1) breach of contract by Defendant Synvest; (2) false promise, in violation of California Civil Code § 1710(4), against Defendants Synvest and Salahudeen; and (3) concealment, in violation of California Civil Code § 1710(3), against the Red Jacket Defendants. (Id. ¶¶ 34–57.) By the present motion, the Red Jacket Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. (Doc. No. 9.) Both McCord and Sanderson submitted declarations with the Red Jacket Defendants' motion to dismiss. (Doc. Nos. 9-1, Sanderson Decl.; 9-2, McCord Decl.) Plaintiff's Chief Executive Officer, Deborah Smith ("Smith"), also submitted a declaration with Plaintiff's opposition. (Doc. No. 13-1, Smith Decl.)

**Discussion**

**I.   Legal Standards**

Under Rule 12(b)(2), a plaintiff bears the burden of establishing personal jurisdiction. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). "However, this demonstration requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting Doe v. Unocal, 248 F.3d 951, 922 (9th Cir. 2001)). While "the plaintiff bears the burden of showing the court has personal jurisdiction over the defendant," the court must "resolve all disputed facts in favor of the plaintiff." Pebble Beach, 453 F.3d at 1154 (citations omitted). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must

be taken as true." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting Schwarzenegger, 374 F.3d at 800). "The Court may consider evidence presented in affidavits and declarations in determining personal jurisdiction." Payrovi v. LG Chem America, Inc., 491 F. Supp. 3d 597, 602 (N.D. Cal. Sept. 29, 2020) (citing Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)). But "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger, 374 F.3d at 800. (citations omitted).

**II.  Analysis**

Plaintiff's complaint alleges the Court has specific personal jurisdiction over the Red Jacket Defendants because they purposefully directed their activities towards a resident of California, Plaintiff's claims arise out of or relates to the Red Jacket Defendants' California-related contacts, and California's exercise of personal jurisdiction is reasonable. (Compl. ¶ 2.) The Red Jacket Defendants argue that the Court should dismiss the case because the Court has neither general nor specific personal jurisdiction over them. (Doc. No. 9 at 3–5.) The Court concludes that it does have specific personal jurisdiction over the Red Jacket Defendants.[1]

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." Dow Chemical Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005) (quoting Chan v. Society Expeditions, 39 F.3d 1398, 1404–05 (9th Cir. 1994)). Because no federal statute authorizes personal jurisdiction in this case, the Court applies the law of the state in which it sits to determine whether it has personal jurisdiction over Defendant. Fed. R. Civ. P. 4(k)(1)(A). "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due

---

[1] Plaintiff does not claim that the Court has general personal jurisdiction over the Red Jacket Defendants, only that the Court has specific personal jurisdiction over them. (Compl. ¶ 2; Doc. No. 13.) As such, the Court limits its analysis to specific personal jurisdiction.

process are the same." Mavrix Photo, 647 F.3d at 1223 (citing Schwarzenegger, 374 F.3d at 800–01). "Due process, in turn, requires that each party 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" In re Boon Glob. Ltd., 923 F.3d 643, 650 (9th Cir. 2019) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Specific jurisdiction exists when all three elements of the following test are satisfied:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing Schwarzenegger, 374 F.3d at 802). The plaintiff bears the burden of satisfying the first two elements; the burden then shifts to the defendant to "set forth a compelling case that the exercise of jurisdiction would not be reasonable." Picot, 780 F.3d at 1211 (citing CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011)).

Here, the question before the Court is whether the Court has jurisdiction over a nonresident corporation and two of the corporation's nonresident officers. A court can exercise "specific jurisdiction over employees based on actions they took on behalf of a corporation." Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101, 1109 (9th Cir. 2020) (citing Davis v. Metro Prods., Inc., 885 F.2d 515, 521 (9th Cir. 1989)); see also Calder v. Jones, 465 U.S. 783, 790 (1984) ("[T]heir status as employees does not somehow insulate them from jurisdiction"). While an employee's contacts with California "are not to be judged according to their employer's activities there," a person's status as an "employee[] does not somehow insulate them from jurisdiction." Davis, 885 F.2d at 521 (quoting Calder, 465 U.S. at 760). Instead, "[e]ach defendant's contacts with the forum State must be assessed individually." Id.
////

### A. Purposeful Direction

The form of the inquiry into the first prong of this test "depends on the nature of the claim at issue." Picot, 780 F.3d at 1212. "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." Glob. Commodities, 972 F.3d at 1107 (citing Schwarzenegger, 374 F.3d at 802; Picot, 780 F.3d at 1212). Both tests "ask whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated' contacts.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462 474–75 (1985)). Although this case involves both tort and contract claims, Plaintiff's only claim against the Red Jacket Defendants is the tort claim of concealment under Cal. Civ. Code § 1710(3). (Doc. No. 1 ¶¶ 48–57.) As such, the purposeful direction test applies here.

"A showing that a defendant purposefully directed his conduct toward a forum state…usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum." Schwarzenegger, 674 F.3d at 803. Whether a defendant has purposefully directed his activities at the forum state requires application of another three-part test: "[t]he defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017) (quoting Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 673 (9th Cir. 2012)).

#### 1. Intentional Act Requirement

Plaintiff has sufficiently alleged the Red Jacket Defendants committed intentional acts. "The meaning of the term 'intentional act' in [the] jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the 'intent to perform an actual, physical act in the real world.'" Picot, 780 F.3d at 1214 (quoting Schwarzenegger, 374 F.3d at 806). A defendant's physical presence in the forum state is not required as long as the Defendant "purposefully directed" efforts toward the

forum. Burger King, 471 U.S. at 476.

For example, in Davis, the Ninth Circuit held that the Arizona district court had specific personal jurisdiction over two nonresident corporate officers. 885 F.2d at 522. The two corporate officers met with an Arizona resident in efforts to form a business relationship. Id. at 517, 522. The corporate officers made representations at the meeting that resulted in the corporate officer's employer entering into six agreements with other Arizona residents. Id. at 523. The Ninth Circuit held that the corporate officers "purposefully directed their activities toward Arizona" and the corporate officers "could have reasonably foreseen that they would be haled into Arizona's courts." Id. at 523. Similarly, in Glob. Commodities, the Ninth Circuit held the California district court had specific personal jurisdiction over two nonresident corporate officers because the corporate officers met with the "[plaintiff corporation's] employees in the forum state to negotiate the…transaction at issue in the suit," made false statements to the plaintiff while at the plaintiff's office, and "traveled to California on multiple other occasions as part of the ongoing business relationship between" the plaintiff and corporate defendant. 972 F.3d at 1110. See also Anderson v. Griswold Int'l, LLC, 2015 WL 10739349, at *3 (N.D. Cal. Mar. 25, 2015) (holding specific personal jurisdiction exists over a corporate officer who swore by personal knowledge the accuracy of franchise disclosure documents that the plaintiffs relied on when entering into franchise agreements); Gen Ads, LLC v. Breitbart, 435 F. Supp. 2d 1116, 1123 (W.D. Wash. June 5, 2006) (holding the corporate officer purposefully directed his actions by engaging in tortious conduct while negotiating a contract even though the corporate officer had not visited the forum state since he was a child.)

The present case is similar to both Davis and Glob. Commodities. Plaintiff alleges in or about September 2019, Plaintiff met with Red Jacket's corporate officers, McCord and Sanderson, regarding its need to raise additional capital. (Compl. ¶ 11; Smith Decl. ¶ 4; McCord ¶ 1; Sanderson ¶ 1.) Plaintiff alleges McCord and Sanderson represented to Plaintiff that Red Jacket could provide an approximately $2,000,0000 investment to

Plaintiff through a preferred stock purchase transaction made by to-be-formed Red Jacket subsidiary. (Id. ¶ 12; Smith Decl. ¶ 4.) Plaintiff alleges Plaintiff and Red Jacket eventually agreed to a term sheet in which Red Jacket Ventures IV Co., a subsidiary of Red Jacket, would pay approximately $2,000,000 for 10% of Plaintiff's stock. (Id. ¶ 13; Smith Decl. ¶ 4, Ex. 1.)

Plaintiff alleges McCord and Sanderson introduced Defendant Salahudeen into the SPA negotiation process. (Id. ¶ 14; Smith Decl. ¶ 5; Sanderson Decl. ¶ 5; McCord Decl. ¶ 5.) Plaintiff alleges the Red Jacket Defendants led Plaintiff to believe Defendant Salahudeen was an employee or agent of Red Jacket and Defendant Salahudeen was acting on behalf of Red Jacket in his interactions with Plaintiff. (Id. ¶ 15; Smith Decl. ¶ 5.) Plaintiff alleges the Red Jacket Defendants provided Defendant Salahudeen with a Red Jacket email address, which Defendant Salahudeen used to communicate with Plaintiff regarding the SPA. (Id. ¶ 15; Smith Decl. ¶ 5, Ex. 2; Sanderson Decl. ¶ 8; McCord Decl. ¶ 8.) Smith represents in her declaration that Defendant Salahudeen's email signature in his emails with Plaintiff's executives stated Defendant Salahudeen was a Red Jacket partner. (Smith Decl. ¶ 13, Ex. 8.)

While negotiating the SPA, Smith represents that she and other Plaintiff's executives met with McCord via Zoom at least six times and met with Sanderson via Zoom at least four times over the course of several months. (Smith Decl. ¶ 6, Ex. 3.) Smith represents that she and other Plaintiff's executives exchanged dozens of emails with McCord and Sanderson regarding the SPA. (Smith Decl. ¶ 7, Ex. 4.) Smith represents that in January 2020, McCord visited San Diego to meet with Plaintiff's executives regarding the SPA. (Smith Decl. ¶ 8.) Smith also represents McCord and Defendant Salahudeen planned a second trip to San Diego to meet with Plaintiff's executives in March 2020. (Smith Decl. ¶ 8, Ex. 5.) Smith represents that while negotiating the SPA, McCord and Sanderson requested Plaintiff's financial documents, including Plaintiff's balance sheet, profit and loss statements, and capitalization table. (Smith Decl. ¶¶ 9–10, Ex. 6.) Smith represents that McCord, Sanderson, and Red Jacket each signed nondisclosure agreements related to

Plaintiff's confidential financial documents. (Id.)

Smith represents that right before the SPA's closing date, McCord, Sanderson, and Defendant Salahudeen informed Plaintiff that Defendant Synvest would be entering into the SPA instead of Red Jacket Ventures IV Co. (Smith Decl. ¶ 12.) Smith represents that the Red Jacket Defendants led Plaintiff to believe Defendant Synvest was a Red Jacket subsidiary and under Red Jacket management. (Id.) Under the terms of the SPA, McCord was to be appointed as a director of Plaintiff. (Id., Ex. 7.)

Plaintiff has sufficiently alleged McCord, Sanderson, and Red Jacket engaged in the intentional acts of soliciting business from Plaintiff; negotiating with Plaintiff's executives and counsel in California through Zoom, email, and an in-person visit by McCord; soliciting Plaintiff's confidential documents; individually signing Plaintiff's nondisclosure agreements; introducing Plaintiff to Defendant Salahudeen; and making representations regarding Defendant Salahudeen's and Defendant Synvest's relationship to Red Jacket. As a result, Plaintiff has satisfied the first prong of the purposeful direction test.

### 2. Expressly Aimed Requirement

Plaintiff has also sufficiently alleged the Red Jacket Defendants' activity was expressly aimed at California. Showing the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state" is relevant to the "expressly aimed" inquiry but will not support personal jurisdiction on its own. Axiom Foods, 874 F.3d at 1069–70. Otherwise, this test would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." Id. at 289. Rather, a plaintiff must show the "defendant's intentional conduct is aimed at, and creates the necessary contacts with, the forum state." AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1209 n.5 (citing Axiom Foods, 874 F.3d at 1068–69).

In their motion to dismiss, the Red Jacket Defendants argue that under Walden v. Fiore, 571 U.S. 277 (2014) the Red Jacket Defendants did not expressly aim their conduct at California. (Doc. No. 9 at 4–5.) The Court disagrees. In Walden, a drug enforcement agent who allegedly violated the Fourth Amendment rights of two Nevada residents while

they were traveling in an airport in Georgia was not subject Nevada's personal jurisdiction. Id. at 288–91. The Supreme Court reasoned that "no part of the [defendant's] conduct occurred in Nevada" and that the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." Id. at 288–89. The Supreme Court further reasoned that the defendant's actions "did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." Id. at 289; see also Picot, 780 F.3d at 1215 (holding the defendant's tortious conduct of making certain statements was not "expressly aimed" at California because the defendant made all statements from outside of California, did not enter California, did not contact any person in California, and so none of the challenged conduct had "anything to do with California itself"); Lin v. Suavei, Inc., No. 3:20-cv-0862, 2021 WL 3913455, at *4 (S.D. Cal. Sept. 1, 2021) (holding the corporate defendant did not "expressly aim" her conduct at California because the corporate defendant did not know her alleged false representations would be used to solicit funds from investors in California).

Here, Plaintiff alleges the Red Jacket Defendants' knew that Plaintiff's principal place of business was California and knew Plaintiff's employees were located in California when it engaged in communications with them. (Smith Decl. ¶¶ 2, 7, Ex. 4.) Plaintiff alleges the Red Jacket Defendants' contacts with Plaintiff were for the purpose of negotiating the SPA. (Doc. No. 13 at 18; Smith Decl. ¶¶ 6–9.) In their declarations, both McCord and Sanderson acknowledge that "the negotiations with Rewardify were conducted by primarily by telephone and e-mail between the Red Jacket Defendants in Canada and Rewardify personnel in California and the United States." (Sanderson Decl. ¶ 6; McCord Decl. ¶ 6.) Both McCord and Sanderson also acknowledge McCord "travelled to California to meet with Rewardify in late 2019." (Sanderson Decl. ¶ 6; McCord Decl. ¶ 5.) Plaintiff alleges the negotiations resulted in Plaintiff and Defendant Synvest executing the SPA in February 2020. (Doc. No. 13 at 18; Smith Decl. ¶¶ 12–13, Ex. 8.) Had the SPA been successful, McCord would be a director of a corporation whose principal place of

business is California. (Doc. No. 13 at 18; Smith Decl. ¶ 12, Ex. 7.) Plaintiff has sufficiently alleged McCord's, Sanderson's, and Red Jacket's "conduct connects [them] to the forum in a meaningful way." Walden, 571 U.S. at 290. Plaintiff has satisfied the second prong of the purposeful direction test.

### 3. Harm Likely to be Suffered in the Forum

Plaintiff has sufficiently alleged the Red Jacket Defendants' activity caused harm that the Red Jacket Defendants knew would likely be suffered in California. After the SPA was executed in February 2020, Plaintiff alleges it suffered harm when Plaintiff never received the purchase price from any of the Defendants and found out that neither Defendant Salahudeen nor Defendant Synvest were actually affiliated with the Red Jacket Defendants. (Id. ¶¶ 21–27; Smith ¶ 15.) Plaintiff alleges it incurred substantial damages as a result of Defendants' conduct, and that its ability to scale its business was severely hampered. (Id. ¶¶ 29–33.) Plaintiff has sufficiently alleged the Red Jacket Defendants should have know that by inducing Plaintiff to enter into the SPA, any harm incurred by Plaintiff due to a breach of the SPA would be suffered by Plaintiff in California. See Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002) ("[A] corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business."). As a result, Plaintiff has satisfied all three prong of the purposeful direction test.

The Court next turns to whether Plaintiff's claims arise out of, or are related to, the Red Jacket Defendants' forum-related activities.

### B.  Arising Out of Forum-Related Activities

To demonstrate that its claims "arise out" of forum-related activities, a "[p]laintiff[] must show that [it] would not have suffered an injury 'but for' [the defendant's] forum related conduct." Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001); see also Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007). Plaintiff has sufficiently alleged the Red Jacket Defendants' negotiations with Plaintiff over the course of months and alleged concealment of information regarding Defendant Saladeeun and Defendant

Synvest resulted in Plaintiff entering into the SJA. (Doc. No. 13 at 16; Smith Decl. ¶¶ 12, 15.) The SJA is the basis of Plaintiff's breach of contract claim. (Compl. ¶¶ 34–39.) At this stage in the litigation, Plaintiff has sufficiently alleged it would not have suffered injury "but for" the Red Jacket Defendants' efforts related to the SPA.

Plaintiff has met its burden of satisfying the first two elements of the specific jurisdiction test. The Court next considers whether the Red Jacket Defendants have met their burden of establishing that exercising jurisdiction in this case would be unreasonable.

### C.     Reasonableness

Once a plaintiff has established the first two elements, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. The Ninth Circuit applies a seven-part balancing test to determine whether a case satisfies the "fair play and substantial justice" element:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Dole Food, 303 F.3d at 1114.

Here, the Red Jacket Defendants have failed to argue that jurisdiction would be unreasonable and so they have failed to satisfy their burden as to the reasonableness prong. Regardless, jurisdiction here is reasonable. The Red Jacket Defendants have a "heavy burden" to prove "a 'compelling case' of unreasonableness to defeat jurisdiction." Id. at 1117. The fact that the McCord and Sanderson are residents of Canada and Red Jacket is a Canada corporation does not alone meet this burden considering "the advances in transportation and telecommunications and the increasing interstate practice of law." Menken, 503 F.3d at 1060. Litigation against foreign defendants like the Red Jacket Defendants does "create[] a higher jurisdictional barrier than litigation against a citizen

from a sister state because important sovereignty concerns." <u>Sinatra v. Nat'l Enquirer, Inc.</u>, 854 F.2d 1191, 1200 (9th Cir. 1988). The government of Canada also has an interest in resolving disputes that involve its citizens. <u>See</u> <u>Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1133 (9th Cir. 2003). But this does not out weight California's "strong interest in providing an effective means of redress for its residents tortiously injured by commercial misappropriation." <u>Sinatra</u>, 854 F.2d at 1200. Further, aside from the Red Jacket Defendants, Defendant Synvest, and Defendant Salahudeen, the witnesses and evidence in this matter are located in California. <u>See</u> <u>Harris Rutsky</u>, 328 F.3d at 1133 (indicating that in determining "which forum could most efficiently resolve this dispute…we focus on the location of evidence and witnesses.) Exercising jurisdiction over the Red Jacket Defendants would not be unreasonable.

## Conclusion

For the reasons above, the Court concludes that the Red Jacket Defendants have purposefully directed its activities toward California, that Plaintiff's claim arises out of the Red Jacket Defendants' California-related activities, and that the exercise of jurisdiction in this case would not be unreasonable. As a result, the Court denies the Red Jacket Defendants' motion to dismiss for lack of personal jurisdiction.

**IT IS SO ORDERED.**

DATED: March 10, 2022

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT